NICHOLS, Respondent, vs. GALPIN and others, Appellants.

*January 14—April 7, 1925.*

*Judgment: Independent action to review: Relief.*

1. One adjudged to be personally liable on a note and mortgage in a foreclosure action, the court having had jurisdiction of the parties and the subject matter, cannot secure a review of the judgment in an independent action to reform the written contract by inserting a clause limiting his liability, there being no allegation of surprise, fraud, excusable neglect, or other fact entitling him to relief from the judgment.  p. 490.
2. Under the Wisconsin Code an equity action in the nature of a bill to review cannot be maintained.  p. 490.

APPEAL from a judgment of the circuit court for Outagamie county: EDGAR V. WERNER, Circuit Judge. *Reversed.*

Reformation.  On the 28th day of October, 1920, the defendants *Louisa Galpin* and *Katherine Willy* were the joint owners of flouring-mill property in the city of Appleton. This property had been inherited and the defendants were very anxious to dispose of it.  The defendant *Francis S. Bradford* represented the defendant *Galpin,* and Mr. Thomas W. Gill of Milwaukee represented the defendant *Willy.*  The plaintiff made a proposition through a Mr. Powell, president of the First National Bank, for taking over the property. After some negotiations an agreement was entered into be-

tween the plaintiff and the defendants *Galpin* and *Willy*, which is as follows:

"*Memorandum of agreement*, made this 28th day of October, 1920, by and between *Louisa Galpin* and *Katherine Willy*, parties of the first part, and *A. L. Nichols*, party of the second part,

"Witnesseth: In consideration of the mutual benefits to be derived, and other valuable consideration, it is agreed between the parties as follows:

"1. Second party is to organize a corporation under the laws of the state of Wisconsin, to be called Willy & Company, Incorporated, with $125,000 capital, all the stock to be common, and to pay the expenses of such corporate organization.

"2. Second party is to sell not less than $53,200 of such common stock, and deposit the money, or its equivalent, in the First National Bank of Appleton, Wisconsin, to be used by him, as hereinafter set forth.

"3. From the moneys realized from the sale of such stock, second party is to pay the indebtedness of Willy & Company, which includes the indebtedness owed to the First National Bank, Marie Ziegenhagen, and James McCrae, and whatever other indebtedness, including the help to date, there may be against said company appearing upon the books, and the balance left to be turned into the treasury of the company; not less than $5,000 to be used immediately for improvements.

"4. Second party agrees to act as general manager of the plant and use his best efforts to make the business a success.

"5. Upon such indebtedness being paid, and receipts therefor filed with the parties of the first part, and a satisfaction of the mortgage upon the property delivered, first parties agree to convey to *A. L. Nichols*, or to such corporation if he so directs, the real estate in block thirty (30) on College avenue, Fifth ward, city of Appleton, Wisconsin, being the Willy & Company flour-mill property, and deliver a bill of sale of all of the personal property, cash in bank, and accounts receivable to second party, or to such corporation if second party so directs, but if conveyed to *A. L. Nichols* then to be by him immediately conveyed to the corporation herein provided for, and first parties to be imme-

diately given a first mortgage upon the real estate so conveyed of $50,000, due in ten years, at six per cent. interest, semi-annually, and there is also to be delivered first parties 200 shares of a par value of $100 each of the stock of such corporation.

"6. It is mutually agreed that the accounts upon the books against S. R. Willy and Nellie L. Willy, and against T. A. Willy, and against the estate of Nellie L. Willy, and the estate of T. A. Willy, and against *Katherine Willy,* and *Louisa Galpin* and Wilbur Willy, shall not be conveyed, but shall be stricken from the books, being a matter of adjustment to be arrived at between the heirs themselves.

"7. It is agreed that time is the essence of this agreement and that the said *Nichols* shall sell the $53,200 worth of stock and deposit the said $53,200 with the First National Bank to carry out this agreement on or before sixty days from the date hereof, and if the said *Nichols* fails to make such deposit, then this agreement is null and void, but may be reinstated by the mutual consent of all parties in writing, setting forth a new limit of time, and it is agreed that *A. L. Nichols* shall have the right to go into the mill at all hours until the expiration of such sixty days, examine the books and advise with the help, and notify first parties of any increasing of the indebtedness which he deems dangerous to the welfare of the business and his rights, and first parties agree to use their best endeavors to correct any such possible conduct.

"In witness whereof, the parties hereto have signed and sealed this agreement.

"KATHERINE K. WILLY. (Seal.)
"LOUISA S. GALPIN.   (Seal.)
"A. L. NICHOLS."      (Seal.)

In February, 1921, the terms of the agreement were carried out, the defendants *Galpin* and *Willy* deeded the real estate to the plaintiff, subject to a mortgage of the First National Bank, and also gave to the plaintiff a bill of sale of the personal property. The plaintiff then gave back to the defendants *Galpin* and *Willy* a real-estate mortgage upon the property to secure the payment of one $50,000 note signed by the plaintiff. On February 23, 1921, the deal

was closed, the organizers of the Willy Company, a corporation formed by the plaintiff, met at the First National Bank and organized the corporation. *Nichols* then made a deed of the property to the Willy Company subject to the mortgage of $50,000 and assigned the bill of sale to the Willy Company. Stock was subscribed to the amount of $125,000 to the subscribers and 200 shares to the defendants *Galpin* and *Willy* for the personal property, leaving 188 shares for the plaintiff. Thereafter the name of the corporation was changed to the Appleton Cereal Mills, which continued to operate the business until the spring of 1924 when it became insolvent. The interest upon the mortgage and the taxes upon the property not having been paid, the mortgagees began a foreclosure action to foreclose the $50,000 mortgage, in which action a deficiency judgment was demanded against *A. L. Nichols*. The plaintiff *Nichols* and his wife were the only persons who appeared as defendants in the foreclosure action. In his answer *Nichols* set up that the giving of the mortgage by him to the defendants *Galpin* and *Willy* was a mere matter of accommodation; that his transfer of personal property to the company was a mere accommodation. After a trial the court directed a foreclosure of the property in the usual form, and further found:

"That if the moneys arising from such sale shall not be sufficient to satisfy said judgment, solicitor's fees, costs, disbursements, interest, and expenses, judgment be rendered , upon the filing and confirmation of the report of sale, specifying the amount of such deficiency, against the said defendants, *A. L. Nichols* and Appleton Cereal Mills, who are personally liable for the payment of the debt secured by said mortgage, for the amount of such deficiency, with interest thereon from the date of said last mentioned report."

Judgment was thereupon entered pursuant to the findings, and the judgment provided for a deficiency judgment against *A. L. Nichols* and the Appleton Cereal Mills.

On August 23, 1923, this action was begun in which it

was sought to reform the contract of October 28, 1920, and it was further alleged that it was agreed between the parties—

"that in the event said conveyance was made direct to this plaintiff, *A. L. Nichols,* and the note and mortgage heretofore mentioned executed and delivered by him to said defendants, then and in that event there was to be no personal liability or obligation on his part, said transaction to be considered an accommodation transaction for the benefit of the corporation and the convenience of the said defendants in closing the details of the sale and transfer of the property and the payment thereof as one transaction; it being further understood between the parties that the transaction when completed by them could be final and conclusive only upon the approval and acceptance thereof by the corporation."

The prayer for relief demanded "judgment that the memorandum of agreement [under date of October 28, 1920] be reformed so as to correctly describe the agreement entered into as aforesaid and an order staying judgment and proceedings in the action of foreclosure heretofore commenced until the conclusion of this action, and for such other and further order as may be just and equitable."

The defendants answered, denying the allegations of the plaintiff's complaint and alleging that the agreement as written and signed expressed the agreement and understanding of the parties.

The court found in favor of the plaintiff. Neither by the findings nor the judgment did the trial court attempt to reform the contract of October 28, 1920, and it was adjudged that *A. L. Nichols* "is not liable upon the notes and mortgage executed by himself and wife . . . to *Louisa S. Galpin* and *Katherine K. Willy* . . . and is not liable for any deficiency judgment that may arise upon the sale of the premises covered by said notes and mortgage."

From the judgment, the defendants *Galpin, Willy,* and *Bradford* appeal.

For the appellants the cause was submitted on the brief of *Bradford & Bradford* of Appleton.

For the respondent there was a brief by *Morgan & Johns* of Appleton, and oral argument by *John Morgan*.

The following opinion was filed February 10, 1925:

ROSENBERRY, J.    The plaintiff upon the trial abandoned all claim for the relief prayed for in his complaint, no doubt for the reason that there was no evidence which tended to prove that it was ever the mutual intention of the parties to insert a·clause in the contract of October 28, 1920, limiting the liability of the plaintiff.   At most the evidence offered by the plaintiff tended to show that the note and mortgage were delivered with the understanding that the corporation should do something to relieve the plaintiff from personal liability on the note and mortgage.   The evidence offered on behalf of the defendant showed that there was no such agreement. The court having found, however, in favor of the plaintiff, we will assume in our consideration of the case that the facts were as contended by the plaintiff.   As already pointed out in the statement of facts, this same contention was set up in the foreclosure action and there litigated and judgment went against the plaintiff in this action, the defendant in that action.   If we consider the prayer for relief in this case amended in accordance with the relief actually granted by the court, this action becomes one somewhat in the nature of a bill of review to review the determination of the court in the foreclosure action.

In *Crowns v. Forest L. Co.* 102 Wis. 97, 78 N. W. 433, this entire subject was reviewed and it was held that under our Code an equity action in the nature of a bill to review cannot be maintained.   There is no allegation of surprise, fraud, excusable neglect, or other allegation of fact which would in any way entitle the plaintiff here to relief from the judgment rendered against him in the foreclosure action. The judgment here is that the note and mortgage in question

are the obligation of the Willy Company and that the plaintiff, *A. L. Nichols,* is not liable upon the note and mortgage, whereas in the foreclosure suit he was adjudged to be liable and direction for judgment for deficiency was included in the foreclosure judgment. By starting an action for the alleged purpose of reforming a written instrument the plaintiff cannot secure a review of a judgment in another action in which the court had jurisdiction of the parties and the subject matter. Plaintiff had his day in court upon the questions adjudicated in this action and he is concluded by the former judgment.

*By the Court.*—The judgment of the circuit court is reversed, with directions to dismiss the plaintiff's complaint, with costs.

A motion for a rehearing was denied, with $25 costs, on April 7, 1925.