Thayer, Respondent, vs. Hyne and another, Appellants.

*May 8—June 15, 1951.*

For the appellants there were briefs by *Jeffris, Mouat, Oestreich, Wood & Cunningham,* and oral argument by *Robert C. Lovejoy,* all of Janesville.

For the respondent there was a brief by *McGowan, Geffs, Geffs & Block* of Janesville, and oral argument by *Jacob Geffs.*

GEHL, J. The first question raised presents an issue of fact: Did defendant Hyne bind himself personally to perform the contract? The trial court found that he did, and we must follow the finding unless the decided preponderance of the evidence is to the contrary. There is a dispute in some of the testimony, and because of the findings we must

assume that the facts relating to such issues are as contended by respondent. *Nichols v. Galpin,* 186 Wis. 485, 202 N. W. 153; *In re Village of Chenequa,* 197 Wis. 163, 221 N. W. 856.

The testimony of the plaintiff—some of it disputed, but none of it incredible—which supports the determination of the trial judge that defendant intended, and did bind himself personally, is the following:

By the terms of his contract with Adirondack, quoted above, he understood that he could not bind the latter in any respect; the blanks which contained plaintiff's orders for the houses were headed "Homes, Inc., 10 W. Main st., Evansville, Wisconsin," (defendant's proposed corporation); defendant never advised plaintiff that he was dealing with the defendant, except as a principal; when plaintiff indicated that he wanted prompt delivery defendant told him that he might have it, as though he were in control of the matter; at an adverse examination of the defendant he testified that of the remittances made by the plaintiff he forwarded to Adirondack the amounts thereof less his commissions. He testified further that when he made his contract with Adirondack he was required to subscribe to the purchase of four houses and make a substantial deposit against such purchase, and that against that deposit he still had a credit at the time of the transactions with the plaintiff. He was asked at the adverse examination to produce the checks showing the remittance of the plaintiff's payments but the record does not disclose that he ever produced them for examination by the court. Plaintiff testified that after some delay in delivery he spoke to defendant and remarked that a friend of his had investigated Adirondack and found that they were not reliable; that defendant responded, "that is not true, they are" and that defendant further said, "in the first place you are dealing with me, I am the distributor in the state of Wisconsin." Defendant at his adverse examination testified that after failure to deliver he had never

written Adirondack requesting them to return plaintiff's money but that in a conversation with the plaintiff he told the latter that he would "attempt to sell the houses."

We are unable to say that the decided preponderance of the evidence is against the court's finding.

Defendant contends that plaintiff had not sufficient justification for rescission of the contracts. When the orders were placed, the plaintiff indicated rather clearly that he desired prompt delivery. His testimony and the reply of the defendant to his complaint that delivery had not been made; that he, defendant, did not blame him if he canceled his contracts, establish that fact. The first contract called for delivery on "October 20th or sooner;" the second made on October 29, 1947, called for delivery to be made in "three weeks from date or four weeks latest." Plaintiff testified that defendant told him when the first order was placed "he would confirm the order and put it through at once." Plaintiff rescinded on about December 1st.

"Under different situations, different tests of what constitutes a material and substantial default may be used. That which under one set of circumstances may be considered too trivial to justify rescission, under other circumstances may be held to be so material as to prevent substantial performance. *Dudley v. Wye,* 230 Mass. 350, 119 N. E. 790." *Illges v. Congdon,* 248 Wis. 85, 95, 20 N. W. (2d) 722, 21 N. W. (2d) 647.

It is generally known that in this part of the country the cost of building increases with the increasing severity of our winter weather. The trial court undoubtedly gave consideration to this fact and to the fact that the parties had it in mind when they stipulated for time of delivery. Apparently the plaintiff bought the houses for investment purposes; delay in delivery necessarily effected a delay in return upon his investment.

After the delay which had occurred and when, after December 1st, Adirondack advised plaintiff that it had just

begun processing the houses, plaintiff was fully justified in rescinding the contract. The trial court's conclusion that time was of the essence is fully warranted by the facts found.

Defendant contends that the delay was caused by the fact that plaintiff's draft for $1,699.12 given as a part payment on the first order failed to clear. The court apparently believed plaintiff's testimony to the effect that when it was given he told defendant to hold it, that he was leaving for the North and that upon his return would make a deposit to the credit of his bank account to meet the draft.

Defendant contends that since plaintiff made no demand for interest in the prayer of his complaint, the court erred in allowing that item. Plaintiff's claim was liquidated. He is entitled as a matter of law to interest from the time of defendant's breach, and hence it was unnecessary to allege the same as a fact or demand it in the prayer of his complaint. *Whereatt v. Ellis,* 68 Wis. 61, 30 N. W. 520, 31 N. W. 762.

*By the Court.*—Judgment affirmed.