ACE ASSOCIATES, INC., Appellant, v. NAGY, Respondent.

*May 1—June 6, 1961.*

For the appellant there was a brief and oral argument by *Joseph E. Tierney* of Milwaukee.

For the respondent there was a brief by *Charles M. Hanratty* and *James C. Sarafiny,* attorneys, and *Albert R. Tadych* of counsel, all of Milwaukee, and oral argument by *Mr. Hanratty* and *Mr. Sarafiny.*

BROWN, J.   This is a fact case.  In a trial to the court, the court's findings of fact may not be set aside on appeal unless contrary to the great weight and clear preponderance of the evidence.  The trier of the fact is the judge of the credibility of the witnesses and the weight of the testimony and the inferences to be drawn from the evidence. *Estate of Fillar* (1960), 10 Wis. (2d) 141, 102 N. W. (2d) 210; *Estate of Fuller* (1957), 275 Wis. 1, 81 N. W. (2d) 64.

Nagy owned a tavern on West Juneau avenue called the "Castle." Ace Associates, Inc., proposed to construct a two-story building on Lisbon avenue in Milwaukee, and for $68,500 to convey the land and the completed building to Nagy. In payment to Ace Associates, Inc., Nagy agreed to give to the corporation the Castle at a valuation to be determined and a cash payment of an amount, which added to

the Castle, would pay the sale price of $68,500. The corporation did not have enough money to begin the construction of the building and Nagy advanced the $24,500 judgment note now in issue. In the exchange of properties Mr. Wyrembek, president of Ace Associates, Inc., acted for that corporation. On April 22, 1954, Nagy conveyed by warranty deed the Castle to Ace Associates, Inc.

The building on Lisbon avenue was completed on or before January 24, 1955. On that date the parties met to perform their outstanding agreements. Attorney Byron Swidler attended the meeting as attorney for the corporation and he had prepared a closing statement as follows:

| | Cr. Buyers | Cr. Sellers |
|---|---|---|
| Sales price | | $68,500.00 |
| Earnest-money deposit | $44,000.00 | |
| *Proration of real-estate taxes:* | | |
| 1955 Bill $Est. $1,800 by agreement | 100.00 | |
| 1954 Bill Castle $423.73 as of 6/30/54 | | 211.87 |
| *Proration of insurance policies:* | | |
| Personal-prop. tax Paid by Nagy | 50.00 | |
| Revenue stamps       84th | 75.35 | |
| Castle | | 48.40 |
| Recording fees | 1.00 | |
| *Proration of rents:* | | |
| Apt. 2 as of 1/15..1/5 mo. T. R. | 220.00 | 22.00 |
| Store 3441 N. 84th St. 1/15..1/5 mo. T. R. | 600.00 | 30.00 |
| Store 8400 W. Lisbon. 12/1.. 1-2/3 mos. T. R. | 675.00 | 375.00 |
| | $45,721.35 | $69,187.27 |
| Cash required to close deal | 23,465.92 | |
| Totals .............. | $69,187.27 | $69,187.27 |

The statement shows the earnest-money deposit of $44,000, which means the value of the Castle previously conveyed. Credits then listed back and forth brought total payments by Nagy to $45,721.35, and credits to the corporation of $68,500 for the Lisbon avenue building, plus other credits amounting in all to $69,187.27. This required a final payment by Nagy of $23,465.92. Nagy drew his check for that amount and delivered it to the corporation and asked the return to him of his initial note of $24,500, for which the closing statement had given him no credit. Mr. Wyrembek said that he was unable to find the note but would deliver it if he was able to find it. Nagy was dissatisfied with that oral promise and, if the note was unavailable for delivery and cancellation, Nagy demanded a release. Mr. Higgins, attorney for Nagy, attended this conference and he drafted a release which the parties signed. Wyrembek signed the release for the corporation. The material parts of the release are:

"Whereas, both parties to this agreement have mutually resolved all differences,

"Now, therefore, in consideration of Ace Associates, Incorporated, deeding, free and clear of all incumbrances, the property at 8400 West Lisbon Avenue, Milwaukee, Wisconsin, to Joseph Nagy and Theresa Nagy, his wife, and in return Joseph Nagy and Theresa Nagy, his wife, paying to Ace Associates, Incorporated, the balance due thereon by the above-mentioned agreement, the said parties mutually agree and do hereby release each other from any and all claims that they may have had or may now have against each other, and more particularly any and all claims that they have pursuant to such hereinbefore-mentioned agreement.

"Dated at Milwaukee, Wisconsin, this 24th day of January, 1955."

On March 22, 1960, Ace Associates, Inc., put Nagy's note of April 6, 1954, in judgment on cognovit, which judg-

ment was opened and the present proceeding begun, as already recited in the statement of facts.

Ace Associates, Inc., submits that the Castle was taken in on the deal at a figure to be appraised and that the corporation's appraisers valued the Castle at only $20,000, whereby Nagy still owes the $24,500 note. This does not work out even on Wyrembek's valuation, for then Nagy would owe the difference between $20,000 and $44,000—$24,000—not $24,500 which the note calls for. The validity of Wyrembek's valuation is suspect also, in view of the fact that Wyrembek sold the Castle six months later for $43,500.

The writings are more persuasive than Wyrembek's testimony concerning the deal. Wyrembek's own attorney, Swidler, undoubtedly got his information about it from his client. In his closing statement Mr. Swidler put down $44,000 as the value of the Castle. Reference to that statement will show that Nagy was charged by the corporation, or the corporation being given credit, for $48.40 for the purchase of revenue stamps on the Castle deed. At $1.10 revenue stamp per thousand dollars this shows payment for stamps indicating a value of $44,000. To rebut these calculations Wyrembek produced the Castle deed with revenue stamps affixed indicating a value of $20,000 and he insists that this proves the value which the Castle represented in the deal. But the closing statement prepared by the attorney of Ace Associates, Inc., shows that the corporation charged Nagy for stamps due on $44,000 of realty value and the trial court was justified in drawing the inference that $44,000 was the value intended by the parties but Ace Associates, Inc., had affixed only part of the stamps for which Nagy had paid or been charged.

The trial court also placed weight on the mutual release given by each party to the other of all claims. Immediately preceding the drafting and execution of the release, Nagy had

demanded that his note be returned to him. Wyrembek was unable to deliver it, so the release was then prepared in its stead and which Wyrembek signed. There could have been no oversight or misunderstanding but that the release intended to discharge the note. The language of the release includes it; the unsatisfied demand for the delivery of the note was the occasion for requiring the release, and the release was drawn and signed to forestall any further demand for payment upon it.

The evidence is strongly in favor of the findings made by the trial court and they support the judgment.

Appellant submits that it is entitled to a new trial because of the prejudice of the trial court. In aid of this contention appellant calls our attention to questions by the court during the trial and the court's comments upon Mr. Wyrembek's evidence and arguments. The case was tried to the court without a jury so the remarks had no influence on such a trier of the fact. They were, of course, evidence of the court's disagreement with the position of the appellant as the case progressed and it is quite apparent that the trial court was strongly prejudiced against the appellant by the time the testimony was closed.

There is no indication of bias for or against any party at the inception of the trial. Appellant's Mr. Wyrembek caused the prejudice that arose by his interpretation of the facts and his explanation and repudiation of documentary evidence damaging to appellant's case. Wyrembek explains that his attorney made a mistake in listing the closing statement's recitation that the Castle was taken in at $44,000; another mistake in charging Nagy for stamps on $44,000 value; another mistake in neglecting to except the note from the release. Wyrembek did not observe any of these mistakes in time to correct them. He explains that the failure to demand payment of the note for almost six years after it was

due, or to attempt till then to collect the $24,500 balance now alleged to have been due, is merely an excusable oversight.

In a trial to the court it is the court which has the duty of determining the veracity of witnesses, the weight to be given to the evidence of such witnesses, and the inferences to be drawn. The court's conclusion that Wyrembek's testimony had little or no persuasive effect was well founded and the court's manifest skepticism regarding it does not constitute error nor call for a new trial because the expression of this disbelief was not postponed until the conclusion of the trial.

*By the Court.*—Judgment affirmed.