LARKIN, Plaintiff and Respondent, v. JOHNSON, Defendant: AMERICAN AUTOMOBILE ASSOCIATION and another, Defendants and Third-Party Plaintiffs and Appellants: MUTUAL SERVICE CASUALTY INSURANCE COMPANY, Third-Party Defendant and Respondent.

*No. 475. Argued March 6, 1975.—Decided March 28, 1975.*
(Also reported in 227 N. W. 2d 90.)

452

For the appellants there were briefs by *Robert J. Kay* and *Geisler & Kay,* all of Madison, and oral argument by *Robert J. Kay.*

For the plaintiff-respondent there was a brief by *Warshafsky, Rotter & Tarnoff, S. C.,* attorneys, and *Michael I. Tarnoff* of counsel, all of Milwaukee, and oral argument by *Michael I. Tarnoff.*

For the defendant-respondent there was a brief by *Ronald L. Piette* and *Hayes & Hayes,* all of Milwaukee, and oral argument by *Mr. Piette.*

CONNOR T. HANSEN, J.  AAA is underwriter for two casualty insurance companies, one of which is the American Mutual Insurance Company of Boston, for automobile insurance. In the event a person applying for automobile insurance does not appear to qualify for insurance with either of the companies for which AAA is an underwriter, AAA's agents and employees can accept the application and submit it to an assigned risk pool.

A few days prior to March 30, 1971, Larkin went to an AAA office in Milwaukee to obtain automobile insurance.

Johnson, a licensed insurance agent and employee of AAA, assisted her in filling out her application. Johnson recommended that she apply for insurance under the Wisconsin Automobile Insurance Plan, an assigned risk pool. Larkin made a deposit of $50. Johnson told her he would submit the application and that she would be billed for the balance which she could pay at the AAA office.

Larkin's application was assigned to Mutual. Johnson and Larkin were advised of the assignment by Mutual. They were both advised that the effective date of the coverage, which included uninsured motorist coverage, was March 31, 1971. The notice was sent to Johnson's residence rather than the AAA office. This procedure is in accord with the practice of AAA when its agents and employees write insurance in companies for which AAA is not the underwriter.

Mutual then notified Larkin and Johnson that the balance on the premium was $94, payable on or before April 22, 1971. The notice to Johnson identified him as the producer of the insurance and authorized him to deduct his specified commission before remitting the premium to Mutual.

April 21, 1971, Larkin went to the AAA to pay the balance on the premium. Johnson was not in the office so she tendered it to Betty Bernklau, a licensed insurance agent and employee of AAA. Larkin testified she did not have her premium notice with her. She could not remember the name of the company but thought it was AAA. Bernklau asked her if American Mutual sounded like the name of the company and Larkin thought it did. She testified she showed Bernklau her driver's license and a credit card, both of which contained her name and address.

Bernklau obtained a file from the American Mutual filing section which belonged to a different Helen Larkin. It appears that the file was not checked to verify the address or to determine if there was a balance due or the

name of the agent. Bernklau accepted the $94 tendered by Larkin, issued her a AAA receipt and placed the money in the AAA register. AAA subsequently sent it to the wrong insurance company.

Larkin received a notice from Mutual about April 28, 1971, advising her the insurance would be canceled on May 10, 1971, unless the premium was paid. She assumed this was a mistake because she had paid, and ignored it.

On or about May 18, 1971, Larkin received another notice indicating that the policy had been canceled for nonpayment. After several unsuccessful attempts to reach Johnson at his office, Larkin reached him at his home. Following discussions with Johnson over the phone and at his office, Larkin was assured that he would take care of the problem. Johnson testified that he could not remember having these discussions. He did state that he had received the cancellation notices at his home. On May 21, 1971, he also received a rebate check from Mutual, payable to either himself or Larkin, but did not notify her to stop driving. Based on the assurances of Johnson, Larkin continued to drive her car. The accident in question occurred on May 31, 1971.

The misrouted premium payment was subsequently located by AAA and was offered to Mutual with demand that the policy be reinstated. Mutual refused and the money is currently being held by AAA.

As to the authority of Bernklau to accept the premium payment, she testified that it was accepted practice in the office to cover for agents who were out of the office but that she had no written or verbal agreement or understanding with Johnson to act as his agent in this regard. She also stated that she received the payment in her capacity as an employee of AAA. Donald G. Kramer, manager of the Automobile Club Service Agency, called by Johnson and AAA, testified that when their agents place an application with the Wisconsin Automobile Insurance Plan, they are acting as independent agents not

as agents for AAA, unlike when they sell AAA's line of insurance. He further stated that AAA expected that their agents would place applications with the plan and instructed them as to the procedures to be followed, including the use of AAA receipts for amounts paid.

Based on this and other evidence, the trial court found that from the time Mutual accepted the assignment of Larkin's application, Johnson was acting as an agent for Mutual; that when Bernklau accepted the payment of the premium she was acting as an agent for AAA and not as an agent for Johnson; that it was the practice and custom of all insurance sales employees of AAA to assist the customer when the soliciting agent was not available; that AAA had actual knowledge of this practice and custom and permitted and condoned the same; that Bernklau, as an employee and agent of AAA, was negligent in processing the premium payment; and that AAA is liable for the negligent acts of its agent-employee.

### Issues.

The following issues are dispositive of this appeal:

1. Did the trial court err in dismissing the third-party complaint against Mutual?

2. Did the trial court err in finding that Bernklau's negligence caused Larkin's loss?

### Third-party complaint.

It is the position of Larkin in the controversy between AAA and Mutual that she does not care which one of them is liable, but that clearly one of them is.

The parties recognize that Johnson was an agent of Mutual. Therefore, liability on the part of Mutual, if any, must arise out of the relationship between Johnson and Bernklau, the person who accepted the premium

payment from Larkin at the AAA office. The trial court found that when Bernklau accepted the payment from Larkin and issued the AAA receipt, she was acting as an agent and employee of AAA and had no verbal or written authorization from Johnson to act as his agent for the collection of premiums on policies issued under the Wisconsin Insurance Plan. These findings are not against the great weight and clear preponderance of the evidence.

Nevertheless, AAA contends that Bernklau was the subagent of Johnson under the doctrine of apparent authority. In the present case the trial court, although it found that Bernklau was acting as the agent for AAA when she took the payment, did not make a specific finding that Bernklau was not also acting as the apparent agent for Johnson. Such a finding, however, can be inferred from the dismissal of the third-party complaint. *See, e.g., Miles Homes, Inc. v. Starrett* (1964), 23 Wis. 2d 356, 359, 127 N. W. 2d 243; *Mueller v. Mizia* (1967), 33 Wis. 2d 311, 319, 147 N. W. 2d 269.

The elements of apparent agency were set forth by this court in *Vandervest v. Kauffman Pizza, Inc.* (1973), 60 Wis. 2d 230, 208 N. W. 2d 428, to be threefold: (a) Acts by the agent or principal justifying belief in the agency; (b) knowledge thereof of the party sought to be held; and (c) reliance thereon consistent with ordinary care and prudence. *See also: Everlite Mfg. Co. v. Grand Valley Machine & Tool Co.* (1969), 44 Wis. 2d 404, 171 N. W. 2d 188.

Mutual asserts that the question of whether the three-prong test of apparent authority has been met is a question of fact. *Iowa National Mut. Ins. Co. v. Backens* (1971), 51 Wis. 2d 26, 34, 186 N. W. 2d 196; *Harris v. Knutson* (1967), 35 Wis. 2d 567, 151 N. W. 2d 654. Questions of fact decided by a trial court as opposed to a jury are subject to the great weight and clear preponder-

ance of the evidence test. *Stueck v. Le Duc* (1973), 57
Wis. 2d 735, 205 N. W. 2d 139; *Ace Associates v. Nagy*
(1961), 13 Wis. 2d 612, 109 N. W. 2d 359.

It is undisputed that Johnson told Larkin that, when
billed for the remainder of her premium, she could tender
payment at the AAA office. It was also undisputed, and
the trial court found, that it was the custom and practice
of all insurances sales employees of AAA to assist the
customer when the actual soliciting agent was not avail-
able. The uncontradicted testimony of Larkin was that
she told Bernklau that she thought her policy was under
AAA. Kramer, whose testimony was also uncontradicted,
testified that although AAA told their agents that when
they sell insurance under the Wisconsin Plan they are
acting as independent agents the insured is not informed
of this. He stated, therefore, that an average person
would feel that he is dealing with AAA when he comes
in to buy insurance.

Mutual asserts that the trial court's analysis of the
evidence led to the conclusion that Bernklau was the
apparent agent of AAA and that this finding was not
against the great weight and clear preponderance of the
evidence. Bernklau testified that she believed she was
acting as an employee of AAA when she took the pay-
ment, which she put in the AAA register after issuing an
AAA receipt. Kramer established that AAA knew of the
practice of one agent helping another in the latter's ab-
sence and that AAA condoned the selling of Wisconsin
Plan insurance and instructed their agents as to the
proper procedures required even though AAA regarded
the agent as an independent agent when selling under
the Wisconsin Plan.

AAA received no part of the commission from an in-
surance policy issued through the Wisconsin Automobile
Insurance Plan and none of the billing or paper work
was done by its office personnel. However, it appears
that AAA did receive an indirect benefit from enabling

its agents and employees to sell the Wisconsin Plan as a service to its members. Larkin's difficulties are directly attributable to the manner in which AAA conducted its business.

We do not agree with the contention of AAA that the undisputed facts in this case present a question of law as to whether Bernklau had apparent authority to act as the subagent for Johnson. Johnson was not a regularly licensed agent for Mutual and Mutual had no choice in the selection of Johnson as its agent under the Wisconsin assigned risk plan.[1] This is not a situation in which Bernklau was performing a ministerial task in an agency under Johnson's control and supervision. We do not consider our determination in this case to create any exception to the established rule that when an insured timely tenders a premium to a person in an insurance agency with whom the insured is transacting business and who has apparent authority to act, that payment is thus timely made to the insurer.

AAA also contends, without citation of authority, that Bernklau could be considered an agent of Larkin for the purposes of paying the premiums on her behalf. Under the facts of this case and based upon the findings of the trial judge, we do not consider this to be a significant argument.

### Negligence.

AAA asserts that even if Bernklau was acting solely as its agent, she was not negligent with regard to handling the premium payment by Larkin. AAA also asserts that Larkin cannot recover for the additional reason that even if Bernklau was negligent, Larkin's own negligence prevents recovery.

The trial court found that Bernklau was negligent in the manner she processed the premium payment of

---

[1] Sec. 619.01, Stats.

Larkin. It made no specific finding as to the negligence of Larkin, but a finding that she was not negligent can be inferred from the trial court's conclusion that AAA was liable to her for the loss sustained. *See, e.g., Miles Homes, Inc. v. Starrett, supra; Mueller v. Mizia, supra; Thayer v. Hyne* (1951), 259 Wis. 284, 48 N. W. 2d 498.

The evidence relating to these issues has been previously set forth. After reviewing the evidence, we are of the opinion that it cannot be said that the findings of the trial court on the issues of negligence or the other issues presented in this case are against the great weight and clear preponderance of the evidence.

*By the Court.*—Judgment affirmed.