KENNETH WILLIAMS *et al.*, Plaintiffs-Appellees, *v.* WILLIAM E. MAGNAFICI *et al.*, Defendants-Appellants.

Third District No. 79-37

Opinion filed November 14, 1979.

Craig M. Armstrong, of Armstrong & Carter, of Ottawa, for appellants.

Robert H. Shultz, Jr., and Lyle W. Allen, both of Heyl, Royster, Voelker & Allen, of Peoria, for appellees.

Mr. PRESIDING JUSTICE STOUDER delivered the opinion of the court:

This appeal arises from an action brought by Kenneth Williams and Cephas Williams, Inc., a corporation, to set aside an assignment of corporate assets for benefit of creditors, on grounds that the assignment was not made in accordance with sections 72 or 76 of the Business Corporation Act (Ill. Rev. Stat. 1973, ch. 32, pars. 157.72, 157.76). A bench trial resulted in an order declaring said assignment to be invalid and void. We reverse.

Plaintiff-appellee, Kenneth Williams, was the majority shareholder in Cephas Williams, Inc., owning 310 shares of capital stock. Williams was also a vice-president in the corporation and was a director. William Magnafici owned the other 95 shares of capital stock and was the president of the corporation as well as a director. Magnafici had sole authority to run the corporation. Betty Williams, Kenneth Williams' wife, was the secretary of the corporation and also was a director. Paul Byrd was the last director. In 1974 Cephas Williams, Inc., was in dire financial straits and on May 17, 1974, an assignment for the benefit of creditors was made by Magnafici as president and attested to by Betty Williams as secretary. Prior to the assignment there was no meeting of the board of directors discussing the assignment nor any resolution recommending an assignment for the benefit of creditors. There was no meeting of shareholders to approve the assignment. Kenneth Williams first learned of the assignment on May 18, 1974. Sometime after this, in May of 1974,

Kenneth Williams executed a waiver of notice of special meeting of shareholders and directors of Cephas Williams Company about which there was a dispute as to whether it referred to the meeting of May 17 or referred to a meeting to be called on June 17 which was never called. Within two hours after executing the waiver, Kenneth Williams had a meeting with defendant-appellant Leonard Spira, the trustee for the benefit of the creditors, and one Vernon Henry, regarding the sale of the Cephas Williams asphalt plant. He was later informed of the sale of the asphalt plant to Henry. He also attended the sale of the physical assets of the business held on June 26, 1974, in Streator, Illinois. He was satisfied with the price offered and obtained for the personal property but was not satisfied with the prices offered for the real property and, along with Magnafici, counseled Spira not to sell it and the real estate was not sold. In the summer of 1974 Kenneth Williams started to work for Spira and thereafter received 33 checks, starting in July 1974 and continuing to February 1976.

On June 4, 1976, Kenneth Williams brought an action alleging a shareholders' derivative action against William Magnafici, corporation president, Betty Williams, corporation secretary, and Leonard Spira, assignee for the benefit of creditors of Cephas Williams. The complaint asked that the assignment for the benefit of creditors dated May 17, 1974, made by Magnafici be declared null and void on the ground that the corporation failed to hold a proper shareholders' meeting at which two-thirds of the outstanding shares of stock must vote affirmatively to make a valid assignment. There were also various other issues raised by complaint, but these were severed by agreement, and the only issue at trial was the validity of the assignment. On October 3, 1978, the trial judge entered judgment finding the assignment to be invalid and ordered that the assignment be declared void.

On appeal, defendant-appellant Spira raises five issues: (1) whether the complaint failed to state a cause of action supporting a derivative suit; (2) where property is assigned to a trustee for benefit of creditors, a party who has assented to the assignment cannot thereafter attack it or pursue remedies inconsistent with the position he has assumed; (3) whether the legal doctrine of estoppel applies; (4) whether the plaintiff ratified the assignment; and (5) whether any cause of action is barred by the doctrine of laches, equitable estoppel and "unclean hands."

■■■ We find that the assignment for the benefit of creditors was ratified by the corporation, and this finding renders discussion of the other issues unnecessary. It is well established that ratification need not be express; it may be implied from the conduct of the parties. (*American Car & Foundry Co. v. Industrial Com.* (1929), 335 Ill. 322, 329 N.E. 80; *George F. Mueller & Sons, Inc. v. Northern Illinois Gas Co.* (1973), 12 Ill. App. 3d

362, 299 N.E.2d 601; *Magid v. Drexel National Bank* (1947), 330 Ill. App. 486, 71 N.E.2d 898.) In *Karetzkis v. Cosmopolitan National Bank* (1962), 37 Ill. App. 2d 484, 490, 186 N.E.2d 72, 75, the court held that:

"* * * ratification may be found to have taken place when the principal, with knowledge of the material facts of the unauthorized transaction, takes a position inconsistent with nonaffirmation of the transaction."

■ It is clear that in the instant case the principal had knowledge of the material facts of the transaction. Kenneth Williams, the majority stockholder and a director of the corporation, was informed of the facts of the assignment the day after it occurred. Williams not only did not attempt to disaffirm the assignment, but in fact he was present at the sale of the corporation's assets, along with Magnafici, the president and only other stockholder, and the two of them advised Spira, the trustee, as to the prices which should be obtained for the property. In addition, Williams went to work for Spira the following month regarding the assignment. This is certainly conduct which is inconsistent with nonaffirmation. Clearly such actions amounted to ratification on the part of Williams.

■ Another means of ratification by conduct occurs where the principal retains the benefit of the transaction. (*Mueller & Sons, Inc. v. Northern Illinois Gas Co.* (1973), 12 Ill. App. 3d 362, 299 N.E.2d 601.) In the present case both the corporation and Williams, individually, gained and retained benefits. The corporation had several of its debts paid off, such as its Federal income tax debt, and it was relieved of liability on certain contracts. Williams gained benefits in that he was personally liable to bonding companies if certain contracts were not performed, and these contracts were assigned as a part of the sale of assets so as to relieve Williams of personal liability. Gaining and retaining these benefits is certainly conduct inconsistent with nonaffirmance.

Furthermore, Williams waited two years before bringing this action to void the assignment. Williams learned of the assignment on May 18, 1974. For the next two years, Williams did nothing to disaffirm the assignment. It was not until June 4, 1976, that Williams brought the action. This delay, during which there were no acts in contradiction of the assignment, is further evidence of ratification.

There is a plethora of evidence showing that Williams ratified the assignment. There is no evidence which refutes or contradicts the claim of ratification. Therefore, we hold that the above-mentioned circumstances establish ratification as a matter of law.

■ Having held that Williams ratified the assignment, the next issue is whether or not Williams' ratification served to bind the corporation. Generally speaking, those who could originally have authorized an act on

behalf of a corporation can ratify if after the act has been done or made without authority. In the present case, under sections 72 and 76 of the Business Corporation Act (Ill. Rev. Stat. 1973, ch. 32, pars. 157.72, 157.76), a vote by two-thirds of the outstanding shares would have authorized the assignment and dissolution of the corporation. Kenneth Williams owned more than two-thirds of the outstanding shares. When he took actions inconsistent with nonaffirmance of the assignment, this acted as a ratification by the corporation of the unauthorized act in that a stockholder owning more than two-thirds of the stock was acting to ratify the assignment. Since the corporation ratified the assignment, it is valid and not void and should remain in force.

For the above mentioned reasons, the judgment of the trial court is reversed.

Reversed.

STENGEL and ALLOY, JJ., concur.