**SELECT CREATIONS, INCORPORATED, a Wisconsin corporation, Plaintiff,**

v.

**PALIAFITO AMERICA, INCORPORATED, an Illinois corporation, Defendant, Counterplaintiff and Third–Party Plaintiff,**

v.

Miryoung (or "Mi Ryoung") LEE, a/k/a "Joy Lee", "Melody Lee", "Miryoung Song", "Miryoung Deering", "Miryoung Deering Song" and "Miryoung Melody Lee", an alien (No. A 36510736); Jong Sik (a/k/a "Jerry") Lee, an alien; Mantae Company Limited, a Korean corporation; Many Amazing Ideas, Incorporated, f/k/a "Mantae America, Incorporated", a New York corporation; Mai Limited, a Korean corporation; Puff Pac Production, Limited, a Korean corporation; Best International Corporation, a Korean corporation; Chusik Hosea Kyongyong a/k/a "Marue Joint Stock Trading Company", d/b/a "Best General Merchandise Corporation" and "Best General Merchandise (USA)", a Korean corporation; Grip Toys, Incorporated, f/k/a "MAI, Limited", a Nevada corporation; Bertrand A. Levesque, a California citizen; Keith D. Nowak, a New Jersey citizen; Lieberman, Rudolph & Nowak, a New York partnership; Samuel Petrovich, a Wisconsin citizen; Thomas Meisenheimer, a Wisconsin citizen; Paul Moss, a Minnesota citizen; Paul Moss & Company, Incorporated, a Minnesota corporation; Robert C. Hooper, a California citizen; Steven Composto, a New York citizen; Forman Marketing & Sales Corporation, a New York corporation; Keith Andes, individually and d/b/a Andes and Company, a Tennessee citizen; Andes America, Incorporated, a Tennessee corporation; Dayton Hudson Corporation, d/b/a "Target Stores", a Minnesota corporation; and John Does I–XX, non-Illinois citizens; Third Party Defendants,

and

Select Creations, Incorporated, a Wisconsin corporation, Counterdefendant.

**PALIAFITO AMERICA, INCORPORATED, an Illinois corporation, Plaintiff,**

v.

**DAYTON HUDSON CORPORATION, a Minnesota corporation doing business through Target Stores, a division of Dayton Hudson Corporation, Defendant and Third–Party Plaintiff,**

v.

**MANTAE AMERICA, INCORPORATED, a/k/a Many Amazing Ideas, Incorporated, a New York corporation, Third–Party Defendant.**

Nos. 91–C–1240, 92–C–214.

United States District Court, E.D. Wisconsin.

Aug. 19, 1993.

1226

Robert H. Storm, Canellos & Storm, Wauwatosa, WI, for Select Creations, Inc., Samuel Petrovich and Thomas Meisenheimer.

Harold A. Laufer, Davis & Kuelthau, Milwaukee, WI, David E. Springer, John K. Lyons, Skadden, Arps, Slate, Meagher & Flom, Chicago, IL, for Paliafito America, Inc.

David F. Loeffler, Krukowski & Costello, Milwaukee, WI, for Joy and Jerrold Lee.

Scott W. Hansen, Patrick Hodan, Reinhardt, Boerner, Van Druren, Norris & Rieselbach, Milwaukee, WI, for MCL.

Thomas G.A. Herz, Grant Killoran, Michael, Best & Friedrich, Milwaukee, WI, for Target/Dayton–Hudson.

Arnold M. Quittner, Alison Zirn, Stroock & Stroock & Lavan, Los Angeles, CA, for MAI.

Stephen P. Juech, Mary Flanner–Strack, Frisch Dudek, Ltd., Milwaukee, WI, for Keith D. Nowak, Lieberman, Rudolph & Nowak.

## DECISION AND ORDER

WARREN, Senior District Judge.

Before the Court is defendant-counterplaintiff Paliafito's [1] motion for entry of judgment against the Mantae defendants pursuant to the First Supplemental Writ of Attachment, Preliminary Injunction, and Appointment of Receiver ("First Supplemental Writ"). For the following reasons, Paliafito's motion is granted as to all but MCL.

## I. BACKGROUND

This proceeding arises from a dispute over an agreement to distribute the Grip Ball

---

1. The Court herein refers to the parties by abbreviations employed in previous orders.

game in the United States. The facts, which involve multiple foreign parties, are complex. *See Select Creations, Inc. v. Paliafito America, Inc., et al.,* 828 F.Supp. 1301, 1305–54 (E.D.Wis.1992). (Order of December 1, 1992 at FF ¶¶ 1–570). For purposes of the motion now before the Court, however, only the following procedural history is relevant.

On April 7, 1993, this Court entered the First Supplemental Writ, which required, *inter alia,* that the Mantae defendants deposit $8 million in cash and marketable securities with Firstar Trust Co. ("the Receiver") by April 15, 1993. (First Supplemental Writ at ¶ 6.) The Mantae defendants were also required to post a bond of $50,000 plus an affidavit of surety. (*Id.* at ¶ 7.) In turn, Paliafito was required to deposit $1.43 million in cash or marketable securities with the Receiver. (*Id.* at ¶ 4; Stannard Dec. at ¶ 2.) The First Supplemental Writ stated, however, that if either party failed timely to deposit the required funds, the Court would, upon motion by the nonviolating party, "enter judgment against the violating party in the amount of the attachment assessed against the violating party and dismiss with prejudice the claims of the violating party." (First Supplemental Writ at ¶ 17.)

The Mantae defendants failed to make the required deposit. (Stannard Dec. at ¶¶ 4–5.) As such, Paliafito was not required to, and did not, deposit anything with the Receiver. Thereafter, on April 19, 1993, Paliafito brought this motion.

At a hearing on April 27, 1993, the Court ordered, *inter alia,* that all prosecution of this action, including Paliafito's motion for judgment, be held in abeyance for a period of sixty (60) days in light of MAI's bankruptcy filing in the Central District of California. (*See* Court's letter of April 27, 1993 at 2.)

At a subsequent hearing on June 25, 1993, the Court ordered, *inter alia,* that Paliafito's motion be further held in abeyance for fourteen (14) days to allow substitute counsel for MCL time to file any information relevant thereto. (*See* Court's letter to parties of

June 25, 1993 at 1.) Said period having elapsed, Paliafito's motion is now before the Court for resolution.

## II. DISCUSSION

### A. Judgment against the Lees

#### 1. LEGAL FRAMEWORK

Resolution of Paliafito's motion turns on the issue of whether default judgment is the appropriate sanction to be entered against Joy and Jerrold Lee ("the Lees") for their failure to comply with the First Supplemental Writ.

■ Rule 16(f), Fed.R.Civ.P., states, in relevant part: "[i]f a party ... fails to obey a ... pretrial order [2] ... the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), or (D)." Fed.R.Civ.P. 16(f). Rule 37(b)(2)(C), Fed.R.Civ.P., in turn, authorizes a district judge to enter "an order ... rendering judgment by default against a disobedient party." Fed.R.Civ.P. 37(b)(2)(C). Under this regime, a district court has broad discretion to sanction a party that fails to comply with a court order. *Patterson v. Coca–Cola Bottling Co.,* 852 F.2d 280, 283 (7th Cir.1988). *See also G. Heileman Brewing Co., Inc. v. Joseph Oat Corp.,* 848 F.2d 1415, 1421 (7th Cir.1988).

■ Said discretion, however, is not unfettered. *Godlove v. Bamberger, Foreman, Oswald and Hahn,* 903 F.2d 1145, 1148 (7th Cir.1990), *cert. denied,* 499 U.S. 913, 111 S.Ct. 1123, 113 L.Ed.2d 230 (1991) (quoting *Schilling v. Walworth Co. Park & Planning Com'n,* 805 F.2d 272, 275 (7th Cir.1986)). A sanction must be proportionate, for instance, to the circumstances surrounding a party's failure to comply with a court order. *Crown Life Ins. Co. v. Craig,* 995 F.2d 1376, 1381–82 (7th Cir.1993). Thus, the harsh sanction of a default judgment, like a dismissal, should usually be employed only in extreme circumstances. *Ellingsworth v. Chrysler,* 665 F.2d 180, 185 (7th Cir.1981). In the Seventh Cir-

---

2. Pretrial orders implicitly covered include those issued pursuant to Rule 64, Fed.R.Civ.P., which, in conjunction with the relevant Wisconsin stat- utes, *i.e.,* Wis.Stat. § 811.02, *et seq.,* effect the seizure of property for the purpose of securing a judgment.

cuit, therefore, it is well-established that trial on the merits is favored over default judgment. *Passarella v. Hilton Int'l. Co.*, 810 F.2d 674, 675 (7th Cir.1987) (relying on *C.K.S. Engineers, Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202, 1205 (7th Cir. 1984); *A.F. Dormeyer Co. v. M.J. Sales & Distrib. Co.*, 461 F.2d 40, 43 (7th Cir.1972)).

Recently, however, the Seventh Circuit "has moved away from the traditional position that [default] judgments are strongly disfavored ...," *Dimmit & Owens Financial, Inc. v. United States*, 787 F.2d 1186, 1192 (7th Cir.1986), and has become reluctant to reverse refusals to set them aside. *See In re State Exchange Finance Co.*, 896 F.2d 1104, 1106 (7th Cir.1990). The precise extent of a district court's discretion to enter default judgment as a sanction has thus waxed uncertain. *See Crown Life*, 995 F.2d at 1381.

Some cases have required a finding of willfulness or bad faith before default judgment can be entered as a sanction. *Fox v. Commissioner*, 718 F.2d 251, 254 (7th Cir. 1983). *See also Philips Medical Systems International, B.V. v. Bruetman*, 982 F.2d 211, 214 (7th Cir.1992); *Diehl v. H.J. Heinz Co.*, 901 F.2d 73, 75 (7th Cir.1990); *Dole v. Local 1942, Int'l Brotherhood of Electrical Workers*, 870 F.2d 368, 371–72 (7th Cir.1989); *Anilina Fabrique de Colorants v. Aakash Chemicals and Dyestuffs, Inc.*, 856 F.2d 873, 877 (7th Cir.1988); *Roland v. Salem Contract Carriers, Inc.*, 811 F.2d 1175, 1179 (7th Cir.1987); *C.K.S. Engineers*, 726 F.2d at 1205. Other cases have not required such a finding. *Govas v. Chalmers*, 965 F.2d 298, 303 (7th Cir.1992). *See also Newman v. Metropolitan Pier & Exposition Authority*, 962 F.2d 589, 591 (7th Cir.1992); *Profile Gear Corp. v. Foundry Allied Industries, Inc.*, 937 F.2d 351 (7th Cir.1991) (affirms default judgments for dilatory tactics absent finding of dishonesty).

■ Resolving this apparent inconsistency, the Seventh Circuit recently held that before entry of default judgment there must be at least some finding of contumacious conduct, dilatory tactics, or the failure of less drastic sanctions.[3] *Crown Life*, 995 F.2d at 1382. As the court stated in *Newman*:

> A plaintiff's failure to comply with discovery orders is properly sanctioned by dismissal of the suit, a defendant's by entry of a default judgment. Of course the circumstances of the failure must be considered, because the judge must be guided by the norm of proportionality that guides all judicial applications of sanctions. If the failure is inadvertent, isolated, no worse than careless, and not a cause of serious inconvenience either to the adverse party or to the judge or to any third parties, dismissal (if the failure is by the plaintiff) or default (if by the defendant) would be an excessively severe sanction.

*Newman*, 962 F.2d at 591 (citations omitted). This apparent reconciliation conforms to the core principles evinced by the weight of the authority. *See, e.g., Powers v. Chicago Transit Authority*, 890 F.2d 1355, 1362 (7th Cir. 1989); *U.S. v. Di Mucci*, 879 F.2d 1488, 1493 (7th Cir.1989) (relying on *C.K.S. Engineers*, 726 F.2d at 1206 (quoting *Inryco, Inc. v. Metropolitan Engineering Co.*, 708 F.2d 1225, 1230 (7th Cir.), *cert. denied*, 464 U.S. 937, 104 S.Ct. 347, 78 L.Ed.2d 313 (1983)); *Webber v. Eye Corp.*, 721 F.2d 1067, 1069 (7th Cir.1983)). *See also Ellingsworth*, 665 F.2d at 185, *cited in Passarella*, 810 F.2d at 676.

■ In light of *Crown Life* and *Newman*, it clearly remains an abuse of discretion to enter judgment against a defendant incapable of complying with a court order. *See, e.g., Diehl*, 901 F.2d at 75 (court abused its discretion in dismissing a suit for failure to follow a discovery order with which it was impossible to comply). *See also Societe Internationale Pour Participations Industrielles Et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 212, 78 S.Ct. 1087, 1095, 2 L.Ed.2d 1255 (1958); *English v. Cowell*, 969 F.2d 465, 473 (7th Cir.1992) ("if the plaintiffs were truly unable to pay the sanctions, they may

---

**3.** Importantly, the prior imposition of less drastic sanctions, though sufficient, is not a prerequisite for entry of default judgment. *Hal Commodity Cycles Mgmt. Co. v. Kirsh*, 825 F.2d 1136, 1138–39 (7th Cir.1987) ("A district court is not required to fire a warning shot"). "[A] trial court is entitled to say, under proper circumstances, that enough is enough." *Pyramid Energy, Ltd. v. Heyl & Patterson, Inc., infra*, at 1062, *cited in U.S. v. Di Mucci, infra*, at 1494.

have a valid excuse for their noncompliance"). *Accord Moon v. Newsome,* 863 F.2d 835, 838 (11th Cir.), *cert. denied,* 493 U.S. 863, 110 S.Ct. 180, 107 L.Ed.2d 135 (1989) ("Where monetary sanctions are imposed on [a] ... litigant and the litigant comes forward showing a true inability to pay, it might be an abuse of discretion for the court then to dismiss for failure to pay").

## 2. ANALYSIS

■ The Court finds that the Lees have willfully failed to comply with a direct court order. As such, they are subject to sanction pursuant to Rules 16(f) and 37(b)(2)(C), Fed. R.Civ.P. In light of their record of contumacious conduct, moreover, and the fact that they have failed to show good cause for the default or take quick action to correct it, *see United States v. One Rolls–Royce Corniche,* 770 F.2d 713, 716 (7th Cir.1985), the Court concludes that the sanction of default judgment is appropriate. As such, Paliafito's motion for default judgment against the Lees will be granted.

After careful consideration of the evidence adduced at and since the two-week attachment hearing of April 1992, the Court, on February 19, 1993, determined that security for judgment was necessary as to both Paliafito and the Mantae defendants, including the Lees, and entered the Writ of Attachment, Preliminary Injunction, and Appointment of Receiver. On April 7, 1993, the Court entered the First Supplemental Writ, specifying, *inter alia,* the amount and date of attachment. Therein, the Court specifically warned the parties that failure to comply would result in judgment against the violator upon motion of the other. (First Supplemental Writ at ¶ 17.) The Lees failed to heed that warning. By April 15, 1993, the date specified in the First Supplemental Writ, the Lees had neither deposited anything with the Receiver, in violation of the Court's order, nor offered a valid explanation for their default. Thereafter, Paliafito moved for judgment.

The Lees do not dispute their default. They argue, instead, that judgment as a sanction therefor is unconstitutional. Under the Seventh Amendment, the Lees contend, a jury must first validate Paliafito's "RICO charge or, any other common law cause of action seeking damages because of 'fraud' or even mine-run breach of contract." (Motion of Miryoung and Jerrold Lee to Reconsider Portions of the April 7, 1993 Writ of Attachment and Preliminary Injunction and Opposition to the Paliafito Motion of April 19, 1993 for Entry of Judgment Against Them ("Lees' Response") at 3.)

The Lees, however, offer no authority for their position. The only case they cite, *NSC International Corp. v. Ryan,* 531 F.Supp. 362 (N.D.Ill.1981), is inapposite. In *Ryan,* the plaintiff brought an action for treble damages pursuant to 18 U.S.C. § 1964(c), which creates a civil remedy for persons injured by violation of 18 U.S.C. § 1962, the Racketeer Influenced and Corrupt Organizations ("RICO") Act. The defendant moved to strike the plaintiff's timely jury demand on the ground that actions pursuant to Section 1964 are equitable, and are thus afforded no right to a jury trial. The court, however, finding that Section 1964 affords *legal* rights and remedies, *i.e.,* damages, held that the plaintiff was entitled to a jury trial under the Seventh Amendment. *Ryan,* 531 F.Supp. at 363–64. In other words, the *Ryan* court held that *if* the plaintiff was entitled to a trial, he was entitled to a trial by jury. Here, on the contrary, there is no dispute that the Lees, if entitled to a trial on the merits, are entitled to a trial by jury. Paliafito's motion raises an entirely different issue, namely, whether the Mantae defendants, in light of their default, are entitled to proceed any further toward trial.

Adopting the Lees' unsupported position would not only abrogate our specific authority to enter default judgment as a sanction for failure to comply with a pretrial order, Fed. R.Civ.P. 16(f) and 37(b)(2)(C), but eviscerate our fundamental mandate under the Federal Rules of Civil Procedure to secure a just, speedy, and inexpensive determination of every action. Fed.R.Civ.P. 1. Absent sanction, litigants would be free to ignore not only orders pursuant to Rule 64, Fed.R.Civ. P., but all orders.

Mindful that default judgment is a harsh sanction not to be administered lightly, *New-*

*man,* 962 F.2d at 591, the Court nevertheless finds it proportionate to the circumstances surrounding the Lees' default. Three (3) incidents, we believe, are particularly demonstrative of those circumstances. First, apparently to avoid the Court's Writ of Attachment, Preliminary Injunction, and Appointment of Receiver ("Writ") of February 19, 1993, the Lees caused MAI to file for protection in bankruptcy pursuant to 11 U.S.C. § 362 in the Central District of California. In fact, bankruptcy counsel for MAI, appearing by telephone at the hearing of February 22, 1993, which was scheduled for the purpose of establishing the amount of the bond and the date certain of attachment, informed the Court that MAI had, *during that very hearing,* filed in bankruptcy. (Order of February 25, 1993 at 3.) Not coincidentally, we believe, MAI's inventory comprised the bulk of the assets sought to be attached. (Writ at ¶¶ 9–12.) Joy Lee and another officer of MAI, moreover, were present with MAI's bankruptcy counsel during the hearing. (Order of February 25, 1993 at 3.)

Second, the Lees failed to timely submit comprehensive *individual* financial statements as directed by the Court on February 16, 1993 and again on February 25, 1993. (Order of February 25, 1993 at 4 & n. 4.) The Court first sought these statements to determine the appropriate scope, amount, and date of attachment. During the delay engendered in part by the Lees' frustration of that determination, however, the Mantae defendants continued to disperse their assets. To avert potential prejudice to Paliafito, it then became necessary to enter summarily the Writ, upon which MAI declared bankruptcy. Thereafter, the Court again sought the Lees' financial statements to determine, *inter alia,* to what extent the Writ must be modified to account for MAI's bankruptcy and to what extent the Lees were capable of complying therewith.

Finally, the Court notes, the Lees failed to comply with the attachment and bond provisions of the First Supplemental Writ without good cause. While they attempt to argue

that they understood the $8 million attachment to run only to MAI, (Lees' Response at 3), the First Supplemental Writ unambiguously defines the Lees as members of the Mantae defendants, (First Supplemental Writ at ¶ 1), and orders them to deposit the $8 million attachment plus a $50,000 bond with the Receiver by April 15, 1993. (*Id.* at ¶¶ 6–7.) The Lees do not even endeavor to explain, the Court notes, their untimely offer to satisfy the latter requirement. (Lees' Response at 3.) The Lees also aver that their compliance was financially impossible. (*Id.*) Not only does this belie their previous contention,[4] however, it is also unsupported by any documentary evidence. In fact, what evidence does exist suggests not only that their compliance was possible, but that the Lees had taken quite deliberate measures to avoid it. The Mantae organization, for instance, made over $5 million in profits in 1991, but remitted virtually the entire amount to Korea, leaving only approximately $200,000 in a bank account in the United States. *Select,* 828 F.Supp. at 1310. The Lees have therefore failed to show a true inability to pay. *Moon,* 863 F.2d at 838; *Rogers,* 357 U.S. at 212, 78 S.Ct. at 1095; *English,* 969 F.2d at 473.

In light of such circumstances, we find the Lees's conduct contumacious and dilatory. In doing so, we are guided by several previous decisions of the Seventh Circuit. Like the plaintiff in *Passarella,* the Lees have "blatantly hindered the district court's efficient handling of the case." *Passarella,* 810 F.2d at 676. In *Di Mucci,* that court upheld a district court's analogous entry of default judgment for the "[d]efendants' repeated failure to comply with discovery, to obey court orders regarding the same, and to appear for their depositions . . . ." *Di Mucci,* 879 F.2d at 1494 (emphasis added). In *Coleman v. Smith,* 814 F.2d 1142, 1146 (7th Cir.1987), the court upheld entry of default judgment against the defendant for repeated failure to comply with pretrial scheduling orders, produce key documents, and help complete the final pretrial order. *Id.,* 814 F.2d at 1145.

---

4. In order to make the determination that they were unable to satisfy the attachment, the Lees must first have determined that they, in addition to MAI, were subject to it.

In *Inryco*, the court upheld the district court's denial of a motion to vacate default judgment after stating that counsel for the defendants "showed a callous disregard for the procedures in this circuit." *Inryco*, 708 F.2d at 1231.

In the eloquent words of the Seventh Circuit, "enough is enough." *Pyramid Energy, Ltd. v. Heyl & Patterson, Inc.*, 869 F.2d 1058, 1062 (7th Cir.1989) (citing *Tolliver v. Northrop Corp.*, 786 F.2d 316, 319 (7th Cir. 1986)). The Lees have exhibited the kind of conduct for which only a harsh sanction, capable of being an "effective deterrent against irresponsible conduct in litigation," *North Central Illinois Laborers' District Council v. S.J. Grove & Sons Co.*, 842 F.2d 164, 167 (7th Cir.1988) (quoting *C.K.S. Engineers*, 726 F.2d at 1206), is appropriate.

## B. Judgment against MCL

### 1. LEGAL FRAMEWORK

Resolution of Paliafito's motion turns on an issue of agency, namely whether MCL granted Joy Lee the authority to act on MCL's behalf in this litigation or is otherwise estopped from denying it.

■ An agency relationship arises when one person, the principal, manifests an intention that another person, the agent, shall act on his behalf. *Strupp v. Farmers Mut. Auto Ins. Co.*, 14 Wis.2d 158, 109 N.W.2d 660, 665 (1961); *Paulson v. Madison Newspapers, Inc.*, 274 Wis. 355, 80 N.W.2d 421, 424 (1957); *Kohl v. F.J.A. Christiansen Roofing Co.*, 95 Wis.2d 27, 289 N.W.2d 329, 332 (App.1980).[5] In such a relationship, the agent's conduct or statements may serve to bind the principal. *See U.S. v. Harris*, 914 F.2d 927, 931 (7th Cir.1990) (on appeal from

E.D.Wis.). Agency may be created either by an act of the parties, such as by a grant of actual or apparent authority or by ratification, or by operation of the law, namely estoppel. *See, e.g., Old Security Life Ins. v. Continental Illinois Nat. Bank*, 740 F.2d 1384, 1391 (7th Cir.1984).

■ Actual authority is that authority the agent reasonably thinks she possesses based on the principal's dealings with her. *See generally Johnson v. Minnesota Mut. Life Ins. Co.*, 151 Wis.2d 741, 445 N.W.2d 736, 738 (App.1989); 2A C.J.S. Agency § 147 (1972). *Accord Oriental Commercial & Shipping Co., Ltd. v. Rosseel, N.V.*, 702 F.Supp. 1005, 1014 (S.D.N.Y.1988) ("Actual authority is the result of the principal's consent manifested to the agent"). There are two (2) types of actual authority: express and implied. Express actual authority is that contained within the "four corners" of the agency agreement, *i.e.*, the communication between principal and agent. "It is the result of the principal's direct manifestations to the agent." 2A C.J.S. Agency § 147 (1972). Implied actual authority is authority that the agent, not a third party, reasonably believes she has as a result of the actions of the principal. *See generally Koehring Co. v. Glowacki*, 77 Wis.2d 497, 253 N.W.2d 64, 68 (1977). It may arise as incident to express actual authority, from custom and usage, by the principal's acquiescence, *i.e.*, ratification, or by emergency or necessity. Irrespective of whether agency is founded on express or implied actual authority, an agent's knowledge may be imputed to the principal. *Ivers & Pond Piano Co. v. Peckham*, 29 Wis.2d 364, 139 N.W.2d 57, 59 (1966).

---

5. A federal court sitting in diversity jurisdiction follows the choice of law rules of the forum state. *Diesel Service Co. v. Ambac Int'l Corp.*, 961 F.2d 635, 637 (7th Cir.1992) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). Based on the choice of law rules of Wisconsin, the Court determined previously that California law applies to Paliafito's claims for breach of contract and fraudulent inducement against the Mantae defendants, (Order of December 1, 1992, 828 F.Supp. at 1305), and that Wisconsin law applies to Paliafito's claims for tortious interference, constructive trust, and breach of fiduciary duty. (*Id.* at

1306). In cases, however, where none of the parties argues for application of a particular state's law, the law of the forum state is presumptively applied. *Harrison v. Dean Witter Reynolds, Inc.*, 974 F.2d 873, 882 (7th Cir.1992), *cert. denied*, — U.S. ——, 113 S.Ct. 2994, 125 L.Ed.2d 688 (1993); *Wood v. Mid–Valley, Inc.*, 942 F.2d 425, 426 (7th Cir.1991). As to the issue of agency here, the Court notes, neither party has argued for application of a particular state's law, though each cites different authority from various jurisdictions. To the extent an outcome-determinative conflict should arise, therefore, the Court will apply Wisconsin law.

When there is a disagreement over whether an act is actually authorized, the course of dealing between principal and agent is relevant. *Old Security*, 740 F.2d at 1391 (citing *Rockford Life Insurance Co. v. Rios*, 128 Ill.App.2d 190, 261 N.E.2d 530 (1970)); *Imperial Appliance Corp. v. Hamilton Mfg. Co.*, 239 F.Supp. 175, 177 (E.D.Wis. 1965) (Grubb, J.); Restatement (Second) of Agency § 34 (1957). An agent does not, in any event, have actual authority to act contrary to the known wishes and instructions of her principal. *See Old Security*, 740 F.2d at 1391 (relying on *Johnston v. Suckow*, 55 Ill. App.3d 277, 12 Ill.Dec. 846, 370 N.E.2d 650 (1977)); Restatement (Second) of Agency § 33 (1957).

Of particular importance to Paliafito's motion is the principal arising from Rule 4, Fed.R.Civ.P., that, absent actual authority to act as an agent for the service of process, an agent is not authorized to accept service on behalf of her principal. *Bennett v. Circus U.S.A.*, 108 F.R.D. 142, 147 (N.D.Ind.1985); Fed.R.Civ.P. 4(d)(3) (service may be effected upon a foreign corporation "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent *authorized by appointment or by law* to receive service of process" (emphasis added)). A number of courts, we note, have reached this conclusion in the analogous context of service upon an attorney. *See, e.g., Bennett*, 108 F.R.D. at 147; *Schultz v. Schultz*, 436 F.2d 635, 639 (7th Cir.1971) (stating, on appeal from E.D.Wis., Reynolds, J., that federal case law is consistent with *Punke v. Brody*, 17 Wis.2d 9, 115 N.W.2d 601 (1962), and *Howard v. Preston*, 30 Wis.2d 663, 142 N.W.2d 178 (1966) [6]); *Gibbs v. Hawaiian Eugenia Corp.*, 581 F.Supp. 1269, 1271 (S.D.N.Y.1984); *Durbin Paper Stock Co. v. Hossain*, 97 F.R.D. 639 (S.D.Fla.1982); *Miree v. United States*, 490 F.Supp. 768, 775 (N.D.Ga.1980); *United States v. Bosurgi*, 343 F.Supp. 815, 817 (S.D.N.Y.1972). *But see United States v. Balanovski*, 236 F.2d 298, 303 (2d Cir.1956) (implied authority to accept service where broad power of attorney given to corporate secretary); *United States v. Davis*, 38 F.R.D. 424, 425–26 (N.D.N.Y.1965).

In *Schultz*, the plaintiff brought an action in diversity against her ex-husband concerning, *inter alia*, matters related to their divorce. Service was effected upon the defendant-husband's attorney, in part on the grounds that he had been given a sweeping power of attorney, including the authority to control and manage the defendant's property, in the prior divorce action, and thus purportedly had implied authority to receive service. The Seventh Circuit, in affirming the district court's decision to grant the defendant's motion to dismiss for lack of personal jurisdiction, found it a "dubious assumption that such authority may be implied in some situations," *Schultz*, 436 F.2d at 637, and held that service upon the defendant's attorney was ineffective because he had not been appointed for that precise task.[7] *Id.*

If an agent lacks actual authority, her actions may nevertheless bind her principal, in most circumstances, if she has apparent authority. *See Schaefer v. Dudarenke*, 89 Wis.2d 483, 278 N.W.2d 844, 847 (1979); *Larkin v. Johnson*, 67 Wis.2d 451,

---

**6.** In *Punke*, the Wisconsin Supreme Court held that an agent who had broad powers to manage the defendant's property and who was empowered to commence actions on the defendant's behalf did not thereby become the defendant's agent for the receipt of process, even in a suit arising directly out of the subject matter of the agency. *Punke*, 115 N.W.2d at 604. In *Howard*, the Wisconsin Supreme Court held that service may be made only upon an agent who has been actually appointed to receive process, not an agent alleged to have implied authority therefor. *Howard*, 142 N.W.2d at 181.

**7.** "Implied" authority as discussed in *Bennett*, *Schultz*, and *Howard*, *supra*, the Court notes, is not to be confused with implied actual authority, which would, we believe, be sufficient for the receipt of process under Rule 4, Fed.R.Civ.P. What these cases actually refer to, it is plain from their factual contexts, is *apparent* authority. *See, e.g., Bennett*, 108 F.R.D. at 147 (plaintiff argues that law firm which represented defendant in the past and discussed the current case with him is thereby his agent for the service of process); *Schultz*, 436 F.2d at 637 (plaintiff argues that attorney, who made a special appearance for the defendant for the purpose of moving the court to dismiss the action on the grounds of, *inter alia*, insufficiency of service, had implied authority to receive process). *Compare Koehring, supra*, 253 N.W.2d at 68, *with Pamperin, infra*, 423 N.W.2d at 853–54.

227 N.W.2d 90, 94 (1975). Apparent authority arises when the principal holds out another as possessing a certain authority, thereby inducing third parties reasonably to believe, that such authority exists even though it does not. *Pamperin v. Trinity Memorial Hospital*, 144 Wis.2d 188, 423 N.W.2d 848, 853–54 (1988); *Rivera v. Eisenberg*, 95 Wis.2d 384, 290 N.W.2d 539, 544 (App.1980). *See also* Restatement (Second) of Agency § 27 (1957). *Accord Old Security*, 740 F.2d at 1391 (relying on *Lawcock v. United States Trotting Ass'n*, 55 Ill.App.2d 211, 204 N.E.2d 802, 805 (1965)).

 Apparent authority is thus a vehicle through which a principal is held vicariously liable to a third party for injury resulting from the misrepresentations of the principal's agent who acted with apparent authority. *Izard v. Arndt*, 483 F.Supp. 261, 263 (E.D.Wis.1980) (Reynolds, C.J.). *See also United States v. One Parcel of Land*, 965 F.2d 311, 318–19 (7th Cir.1992) (relying on *United States v. O'Connell*, 890 F.2d 563, 568 (1st Cir.1989); *In re Atlantic Financial Management, Inc.*, 784 F.2d 29, 31–32 (1st Cir.1986), *cert. denied sub nom, AZL Resources Inc. v. Margaret Hall Found., Inc.*, 481 U.S. 1072, 107 S.Ct. 2469, 95 L.Ed.2d 877 (1987)). A principal is liable, for example, for fraud upon a third person committed by an agent acting with apparent authority. *One Parcel of Land*, 965 F.2d at 319.

> Liability is based upon the fact that the agent's position facilitates the consummation of the fraud, in that from the point of view of the third person the transaction seems regular on its face and the agent appears to be acting in the ordinary course of the business confided to him.

Restatement (Second) of Agency § 261, Comment a, at 571. In fact, a principal is liable for the tort of an agent acting with apparent authority even if the principal derives no benefit from the agent's actions and the agent acts entirely for his own purposes. *See One Parcel of Land*, 965 F.2d at 319 (citing *American Soc'y of Mechanical Engineers, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 565–67, 102 S.Ct. 1935, 1942–43, 72 L.Ed.2d 330 (1982)). *Accord* Restatement (Second) of Agency §§ 261, 262. In *Hydrolevel*, for example, the chairman of the Society's safety code committee, at the request of the plaintiff's competitor, declared the plaintiff's product unsafe in a letter on official stationery. The competitor then used the letter to discourage the plaintiff's customers. The Supreme Court held that, even though the Society did not benefit from or approve the letter, it could be held liable under the Sherman Act because its agent had acted with apparent authority. *Hydrolevel*, 456 U.S. at 577, 102 S.Ct. at 1948.

 Apparent authority can only be created, however, by the principal's representations to a third party. *Amplicon, Inc. v. Marshfield Clinic*, 786 F.Supp. 1469, 1476 (W.D.Wis.1992) (citing *Sater v. Cities Service Oil Co.*, 235 Wis. 32, 291 N.W. 355, 359 (1940)) ("The principal has to have acted affirmatively in establishing the apparent agency: '[T]he apparent authority for which the principal may be liable must be traceable to him, and cannot be established solely by the acts and conduct of the agent; the principal is only liable for that appearance of authority caused by himself' "); *Laborers Int'l Union of North America v. HSA Contractors, Inc.*, 728 F.Supp. 519, 525 (E.D.Wis. 1989). As such, the relevant question is not whether a third party would think the agent's position would facilitate his activities, but whether to a third person the agent appears to be acting in the ordinary course of business provided to him. *One Parcel of Land*, 965 F.2d at 319 (citing Restatement (Second) of Agency § 261). In *Laborers Int'l*, for example, the court held that the defendant had, in offering no evidence of direct verbal or written representations made by the plaintiff to the defendant that the alleged agent would be acting on its behalf, failed to show that the plaintiff had conferred any apparent authority. *Id.*, 728 F.Supp. at 527.

 The burden of proving apparent authority, of course, rests on the party asserting that the act was authorized. *Laborers Int'l*, 728 F.Supp. at 526. To establish apparent authority, one must show: (1) acts by agent or principal justifying belief in the authority, (2) knowledge thereof by the party sought to be held, and (3) reliance thereon

consistent with ordinary care and prudence. *Amplicon,* 786 F.Supp. at 1476 (relying on , *Larkin,* 227 N.W.2d at 94); *Schaefer,* 278 N.W.2d at 847; *Vandervest v. Kauffman Pizza, Inc.,* 60 Wis.2d 230, 208 N.W.2d 428, 435 (1973); *McDonald v. Century 21 Real Estate Corp.,* 111 Wis.2d 600, 331 N.W.2d 606, 608 (App.1983). *Accord Northern Trust Co. v. St. Francis Hospital,* 168 Ill.App.3d 270, 119 Ill.Dec. 37, 42, 522 N.E.2d 699, 704, *appeal denied,* 121 Ill.2d 572, 122 Ill.Dec. 440, 526 N.E.2d 833 (1988) ((1) the principal's consent to or knowing acquiescence in the agent's exercise of authority; (2) the third person's knowledge of the facts and good-faith belief that the agent possessed such authority; and (3) the third person's reliance on the agent's apparent authority to his or her detriment).

An agent has no authority, of course, to act contrary to the known wishes and instructions of his or her principal. *See Old Security,* 740 F.2d at 1391; Restatement (Second) of Agency § 33 (1957). *Accord Johnston,* 12 Ill.Dec. at 849, 370 N.E.2d at 653. There are situations, however, in which an individual will purport to act on behalf of another person without any type of authority. When the "principal," knowing the material facts of such an unauthorized transaction, acts in a way inconsistent with its nonaffirmation, *see generally Spivey v. Great Atlantic & Pacific Tea Co.,* 79 Wis.2d 58, 255 N.W.2d 469, 473 (1977); *Matter of Alexander's Estate,* 75 Wis.2d 168, 248 N.W.2d 475, 480 (1977); *accord Old Security,* 740 F.2d at 1392 (citing *Williams v. Magnafici,* 77 Ill. App.3d 1035, 33 Ill.Dec. 864, 397 N.E.2d 197 (1979); *Karetzkis v. Cosmopolitan National Bank,* 37 Ill.App.2d 484, 186 N.E.2d 72 (1962)), or retains the benefits thereof, *Carlson v. Taylor,* 41 Wis.2d 685, 165 N.W.2d 178, 184 (1969); *accord Old Security,* 740 F.2d at 1392 (citing *George F. Mueller & Sons, Inc. v. Northern Illinois Gas Co.,* 12 Ill.App.3d 362, 299 N.E.2d 601 (1973)), the transaction is said to be ratified. The essence of ratification, therefore, is a principal's definitive manifestation of intent to become party to a transaction done or purported to be done on his account. *Matter of Alexander's Estate,* 75 Wis.2d 168, 248 N.W.2d at 480. *See generally* Restatement (Second) of Agency §§ 82, 85, 87, 88, 92.

To prove ratification, one must show that: (1) the act, even if a tort, was performed on behalf of the principal, *Old Security,* 740 F.2d at 1392 n. 7; *see generally* Restatement (Second) of Agency § 218 (1957); (2) the principal knew or reasonably should have known the material facts, *see Shearer v. Dunn County Farmers Mut. Ins. Co.,* 39 Wis.2d 240, 159 N.W.2d 89, 93 (1968); (3) the principal ratified the entire transaction; and (4) the principal had the requisite legal capacity. *See Old Security,* 740 F.2d at 1392. Once ratified, an act is treated as if it had been performed with authority. If the ratified act is a contractual transaction, therefore, it is treated as if it had been originally entered into with authority.

Unlike ratification, estoppel arises only when a party's statement or conduct misleads another into the belief that a right will not be enforced and causes him to act to his detriment in reliance on that belief. *See generally E.L. Husting Co. v. Coca Cola Co.,* 205 Wis. 356, 237 N.W. 85 (1931), *reh'g denied,* 205 Wis. 356, 238 N.W. 626, *cert. denied sub nom, Wisconsin Coca Cola Bottling Co. v. E.L. Husting Co.,* 285 U.S. 538, 52 S.Ct. 311, 76 L.Ed. 931 (1932). *Accord Old Security,* 740 F.2d at 1392 (relying on *Saverslak v. Davis–Cleaver Produce Co.,* 606 F.2d 208 (7th Cir.1979), *cert. denied,* 444 U.S. 1078, 100 S.Ct. 1029, 62 L.Ed.2d 762 (1980)). Estoppel may be invoked to bind the principal to contracts or acts by their agents in excess of the authority conferred upon them by the principal. *Cf. Diederich v. Wisconsin Wood Products,* 247 Wis. 212, 19 N.W.2d 268, 270 (1945). Reliance on the conduct of another, however, is an essential element of any such claim. *See Old Security,* 740 F.2d at 1393. Thus, estoppel differs from apparent authority only in application. Whereas apparent authority makes the principal a party to the contract, with contractual rights and liabilities, estoppel is merely a remedy to protect an innocent third party against loss.

## 2. ANALYSIS

The Court finds that Joy Lee had no authority to act on MCL's behalf in *any* of MCL's affairs, much less in the service or

acceptance of process. The Court further finds that MCL neither ratified, nor is estopped from now repudiating, her purported authority. Under these circumstances, the Court concludes, the validity of our exercise of *in personam* jurisdiction over MCL is in serious doubt and entry of default judgment against MCL is inappropriate.

That MCL defaulted on the First Supplemental Writ is undisputed. The Court's order of April 7, 1993 and the default warning therein unambiguously applied to MCL, in addition to the other Mantae defendants. (*See* First Supplemental Writ at ¶ 1.) Like the Lees, MCL defaulted by failing to deposit anything with the Receiver by April 15, 1993, and Paliafito thereafter moved for judgment. Nevertheless, MCL argues that entry of judgment as a sanction therefor would be unjust for three (3) reasons. First, MCL argues that it is not subject to the Court's jurisdiction because it has never been properly served or represented in these proceedings. (Letter from Scott W. Hansen to Court of July 2, 1993 ("MCL's Response") at 6); (Letter from Scott W. Hansen to Court of July 14, 1993 ("MCL's Sur–Response") at 3–4.) Neither Joy Lee nor Lieberman & Nowak, MCL contends, ever had any authority, actual, (MCL's Sur–Response at 4–6), or apparent, (*id.* at 7–10), to act on MCL's behalf for any purpose, nor is MCL now estopped to deny their authority. (*Id.* at 10–13.) Second, MCL argues that its failure to comply with the First Supplemental Writ, to whatever extent possible, was induced by Joy Lee's misrepresentations, and was not the result of a deliberate or bad faith omission. (MCL's Response at 2–4.) Finally, MCL argues that it was, in any event, financially unable to comply with the First Supplemental Writ. (*Id.* at 5; MCL's Sur–Response at 13–14.) The Court addresses only MCL's first argument, finding it dispositive.

It is a long-established principle, and the basis for MCL's argument, that prejudgment attachment, as nothing more than a remedy, cannot be maintained in the absence of a right to prosecute the action to which it is ancillary. *Woods v. Winter,* 252 Wis. 240, 31 N.W.2d 504, 507 (1948). As such, an attachment of the assets of a defen-

dant who has not been served is void. *Cummings v. Tabor,* 61 Wis. 185, 21 N.W. 72 (1884). *See generally* 7 C.J.S. Attachment §§ 3, 69 (1980). Similarly, the Court notes, jurisdiction over a defendant ordinarily cannot be maintained absent valid service. Thus, a default judgment against a defendant who has not been served is void. *Bennett,* 108 F.R.D. at 146 (relying on *Armco, Inc. v. Penrod–Stauffer Bldg. Systems,* 733 F.2d 1087, 1089 (4th Cir.1984); *Varnes v. Local 91,* 674 F.2d 1365 (11th Cir.1982)). Under Rule 4, Fed.R.Civ.P., the Court notes, service upon a foreign corporation, partnership, or unincorporated association must be effected by any of three (3) methods. In actions initiated in state court, service may be made in accordance with the law of the forum state. Fed.R.Civ.P. 4(c)(2)(C)(i). Service may also be made by mailing a copy of the summons and complaint, with an acknowledgment form to be returned, to the person to be served. Fed.R.Civ.P. 4(c)(2)(C)(ii). In the event that acknowledgment under the latter provision is not returned, however, service *shall* be effected "by delivering a copy of the summons and complaint to and officer, a managing or general agent, or to any other agent authorized by appointment or by law to accept service of process...." Fed. R.Civ.P. 4(d)(3). Paliafito fails to allege compliance with either of the former provisions. As such, the Court need only address the latter.

MCL argues, on the basis of the affidavit of Jae Duck Kim, a former owner of MCL, that it has never been served with a summons and complaint in this action. (MCL's Sur–Response at 3–4.) According to Mr. Kim, MCL has never been served, (Kim Aff. at ¶ 9), apprised of the proceedings by any court papers, (*id.*), or represented in this action. (*Id.* at ¶ 10.) Mr. Kim also states that MCL never "authorized or approved any papers, motions, pleadings or any other document that may have been filed with the United States District Court, Eastern District of Wisconsin by Lieberman & Nowak or Quarles & Brady." (*Id.* at ¶ 11.) Rather than contest these assertions, *i.e.,* that service was not effected upon an officer or managing agent of MCL, Paliafito seemingly argues instead that Joy Lee acted either as

MCL's general agent or agent authorized by appointment to receive service, apparently in an attempt to make service on her imputable to MCL under Rule 4(d)(3), Fed.R.Civ.P. For the following reasons, the Court finds this argument unpersuasive.

Paliafito, the Court notes, does not even attempt to argue that Joy Lee's purported authority arose from within the "four corners" of any communication she had with MCL, or was otherwise thereby directly manifested, i.e., that Joy Lee had express actual authority. See 2A C.J.S. Agency § 147. There is, in fact, no such evidence of which the Court is aware. Mr. Kim's affidavit, on the other hand, provides direct evidence to the contrary, stating that MCL never authorized Joy Lee to accept service, retain counsel, offer testimony, or make any decisions on MCL's behalf in this lawsuit. (Kim.Aff. at ¶ 8.) As such, despite Paliafito's contrary rhetoric, (see, e.g., Paliafito's Reply at 5), the Court is not persuaded that Joy Lee had express actual authority to act on MCL's behalf.

■■■ Paliafito does seemingly argue, however, that MCL's actions led Joy Lee reasonably to believe that she had authority to act on its behalf, i.e., that Joy Lee had implied actual authority.[8] MCL, Paliafito claims, faxed a Korean share transfer certificate ("certificate") to Joy Lee on February 11, 1991, indicating that Joy Lee had purchased 50% of the outstanding shares of MCL in August of 1990. (Paliafito's Reply at 2–4. Cf. Nowak Aff. at ¶ 15 ("I made that request to Ms. Lee, received stock ownership documents in response to that request, and forwarded them to counsel for PAI").) Later that same day, Paliafito claims, Keith Nowak

faxed the same certificate to Paliafito's counsel to demonstrate that Joy Lee had authority to execute the exclusive distribution agreement on MCL's behalf. (Paliafito's Reply at 3; Hupe Aff. at ¶¶ 4–6.) As discussed below, Paliafito argues that this certificate raises an issue of *apparent* authority. (Paliafito's Reply at 3–5.) In light of the preceding discussion of Rule 4, Fed.R.Civ.P., however, it is relatively certain that apparent authority is insufficient for the service or acceptance of process. The Court finds, in any event, that the certificate also raises a colorable issue of *implied actual* authority, in that it had inferable effects on Joy Lee. Under the circumstances of its transmission, the certificate arguably gave Joy Lee reason to consider herself an agent of MCL.[9]

■■■ The Court remains unpersuaded, however, that MCL ever granted Joy Lee implied actual authority. The certificate, for instance, is problematic evidence. Under Rule 801(c), Fed.R.Evid., any written assertion, which is offered in evidence to prove the truth of the matter asserted, other than one made by the declarant while testifying, is hearsay and is, under Rule 802, Fed.R.Evid., usually not admissible. , Fed.R.Evid. 801(c) and 802. Scott Hupe states, however, that his copy of the certificate came from Handler & Associates, Paliafito's counsel, who received a fax containing it from Nowak, "which MCL previously sent to Nowak." (Hupe Aff. at ¶ 5.) Susan B. Jacobson's copy, moreover, was apparently produced by MAI in state court in New York, where MCL was not a party. (Jacobson Dec. at ¶ 4.) Neither copy, therefore, would usually be admissible if offered against MCL. Even

8. Paliafito's Reply never actually refers to Joy Lee's alleged authority as "implied actual" authority. In fact, Paliafito's Reply fails to meaningfully differentiate between Joy Lee's alleged actual and apparent authority. While it appears, however, that Paliafito's main argument is that Joy Lee had apparent authority, i.e., that MCL held out to *Paliafito* that Joy Lee had authority, (see, e.g., Paliafito's Reply at 5), the Court finds that, based on the Korean share transfer certificate, a colorable argument exists that Joy Lee had implied actual authority, i.e., that MCL held out *to Joy Lee* that she had authority.

9. This impression was arguably bolstered by MCL's alleged acquiescence to many of Joy Lee's activities. (*See* Paliafito's Reply at 6.) *See Old Security,* 740 F.2d at 1391 (course of dealing between parties relevant when dispute arises as to actual authorization). Paliafito, however, argues only that these circumstances comprised either MCL's grant of apparent authority to Joy Lee or ratification of her unauthorized acts, not a grant of implied actual authority to her. (Paliafito's Reply at 5–6.) In light thereof, and absent evidence that said circumstances involved more than MCL's silence, unlike the circumstances of the certificate, the Court declines to address them here.

under the exception for admissions by a party-opponent, Fed.R.Evid. 801(d)(2), the certificate would not be admissible because it has not been authenticated as required by Rule 901, Fed.R.Evid. Paliafito neither establishes the identity of the individual who allegedly sent the certificate from MCL nor offers evidence that the certificate was actually the document allegedly received by Mr. Nowak. *Cf. People v. Hagan*, 199 Ill.App.3d 267, 145 Ill.Dec. 322, 337–38, 556 N.E.2d 1224, 1239–40 (1990), *aff'd*, 145 Ill.2d 287, 164 Ill.Dec. 578, 583 N.E.2d 494 (1991) (admission of fax letter was proper where there was testimony as to how the fax was sent and received, and the fax machine operator and addressee identified the fax). As such, there is insufficient evidence to treat the certificate as the admission Paliafito might claim it is. Fed.R.Evid. 901(a).

 Even assuming the certificate were admissible and reliable, however, it nevertheless would not be probative of Paliafito's claim. Neither the certificate nor any communication between MCL and Joy Lee of which the Court is aware, as discussed above, contains any language denoting express actual authority. The certificate does contain language, on the other hand, that undermines any claim that it gives rise to implied actual authority. That language fails to establish, for instance, that any stock transfer actually occurred: "The above stocks *to be transferred* to Mi Ryong Song . . . ." (Hong Declaration, Ex. A (emphasis added). *See also* Jacobson Declaration, Ex. B; Hupe Aff. at ¶¶ 5–6, Ex. A. *Cf.* Kim Aff. at ¶ 5 (dates of actual transfers shown).) There is, in fact, more reliable evidence to the contrary. MCL's corporate registry, as issued by the Taegu Civil District Court, lists all officers of MCL from 1986 to present and Joy Lee, by that name or any other, is not among them. (Kim Aff., Ex. A.) Joy Lee does not appear, moreover, anywhere in the list of MCL's shareholders from 1986 to present, as provided by Mr. Kim. (Kim Aff., Ex. B.)

 Paliafito's main argument is apparently that "MCL held out Joy Lee and Man-

tae America, Inc. to represent MCL to others," (Paliafito's Reply at 5), *i.e.*, that MCL conferred apparent authority on Joy Lee. In light of Rule 4, Fed.R.Civ.P., however, this argument is inapposite. Thereunder, Joy Lee was not authorized to accept service on MCL's behalf absent *actual* authority to do so. *Bennett*, 108 F.R.D. at 147; *Schultz*, 436 F.2d at 639.

 Were it otherwise, Paliafito's argument as to apparent authority would nevertheless prove unavailing. Of the incidents Paliafito relies upon in support thereof, most consist of the alleged actions and representations of Joy Lee.[10] They are inapposite. An agent cannot create apparent authority by her own actions or representations. *See Laborers Int'l*, 728 F.Supp. at 525. The alleged actions and representations of MCL, on the other hand, do not show that Joy Lee had any authority to act on its behalf. Mr. Kim, the Court notes, denies that he ever met Mr. Hupe in Korea. (Kim Aff. of August 6, 1993 at ¶ 1.) Even assuming they did meet, (*see* Nowak Aff. at ¶ 7), the meaning of Mr. Kim's self-description as "Paliafito's new business partner," (Hupe Aff. at ¶ 8), is indeterminate. (*But see* Nowak Aff. at ¶ 8.) It is also unclear from Mr. Hupe's affidavit, moreover, precisely what was said, and by whom, at the alleged meeting thereafter between Mr. Hupe, Mr. Kim, Mr. Lee, and some Korean bankers regarding the distribution agreement. (Hupe Aff. at ¶ 9.) Neither incident, the Court concludes, demonstrates that MCL held out Joy Lee as its agent to Paliafito. Even assuming MCL had, however, the Court finds the extent of Paliafito's alleged reliance thereon unreasonable. Whatever vague impressions Mr. Kim's conduct may have engendered, they were not sufficient, given the multimillion dollar stakes of the exclusive distribution agreement, to justify Paliafito's quiescence as to Joy Lee's purported authority. As such, Paliafito has failed to establish at least two (2) of the elements that must be shown to support a claim of apparent agency, namely acts justi-

---

10. Paliafito argues, for instance, that Joy Lee: (1) used MCL's name; (2) transacted business out of MCL's Korean offices; (3) used MCL's

corporate stationery; and (4) held itself out as a branch of MCL. (Paliafito's Reply at 6.)

fying belief and reasonable reliance thereon. *See Amplicon*, 786 F.Supp. at 1476.

To the extent Paliafito also relies on the latter incident to argue that MCL ratified Joy Lee's unauthorized acts, the Court is similarly unpersuaded. As such, the Court need not address whether ratification, as distinct from apparent authority, is sufficient for the purposes of Rule 4, Fed.R.Civ. P., *i.e.*, whether ratification, like actual authority, can convey upon an agent actual authority to accept service. *But see Gilbert–Arnold Land Co. v. O'Hare*, 93 Wis. 194, 67 N.W. 38 (1896). Though a principal's silence can be binding under certain circumstances, *SEI Corp. v. Norton & Co.*, 631 F.Supp. 497, 502 (E.D.Pa.1986), the meaning of Mr. Kim's silence at the alleged meeting with Mr. Hupe and the Korean bankers is indeterminate, especially in light of his claim that he had no knowledge of Joy Lee's alleged 50% stake in MCL until recently. (Kim Aff. at ¶ 8.) As such, the Court concludes, it cannot support a claim of ratification.

Finally, Paliafito argues, MCL is estopped from disputing Joy Lee's authority because it failed to inform the Court that she was an imposter until after entry of the Writ of February 19, 1993. (Paliafito's Reply at 7–8.) To whatever extent, however, that estoppel is even relevant in light of Rule 4, Fed.R.Civ.P., as discussed above, this argument is not persuasive. First, the Court finds, the February 23, 1993 declaration of Kenneth L. Bressler of Lieberman & Nowak does not demonstrate, as Paliafito asserts, to what extent MCL was advised of the nature and status of this litigation before entry of the Writ. All it really shows is that, as of January 15, 1993, MCL was aware of Joy Lee's purported ownership of MCL and Nowak & Lieberman's desire to withdraw from this action. (*See* Bressler Dec. at ¶ 6.) There is, moreover, evidence that MCL was unaware of any allegations of wrongdoing in this case until June of 1993. (Kim Aff. at ¶ 9.) Second, the Court finds, Lieberman & Nowak did not, as Paliafito claims, continue to appear on MCL's behalf after advising MCL of their conflict of interest. At the February 16, 1993 hearing on damages, Mr. Nowak appeared only for MAI. (Tr. at 3: 4–

10. *See also* Nowak Aff. at ¶ 13.) Finally, the Court finds, *SEI Corp.*, 631 F.Supp. at 501–02, cited by Paliafito, is inapposite. In *SEI Corp.*, an American businessman received a copy of a summons and complaint, naming him as a defendant, attached to a letter from unauthorized counsel. His authorized counsel, however, waited *until the third day of trial* to raise the issue of unauthorized representation. *Id.* at 499. On these markedly different facts, the court held, contrary to Paliafito's somewhat misleading characterization, that the client's "*authorized counsel* was under a duty to promptly notify either the plaintiff or the court of [the] unauthorized representation." *Id.* at 502 (emphasis added). MCL, on the other hand, was not aware of the proceedings, as discussed above. Nowak & Lieberman, moreover, was not MCL's authorized counsel. (*But cf.* Nowak Aff. at ¶ 4.) Finally, no trial was pending in this case when the issue of unauthorized representation arose. As such, the Court finds no authority for Paliafito's argument that MCL was estopped, after entry of the Writ, from denying Joy Lee's authority.

## C. Judgment against the other Mantae defendants

The other Mantae defendants fail to contest Paliafito's motion. In light thereof, and for reasons analogous to those given in our discussion of the Lees above, the Court finds that the sanction of default judgment is appropriate. As such, Paliafito's motion therefor will be granted, but only to the extent that it does not violate the automatic stay provisions under Section 362 of the Bankruptcy Code, 11 U.S.C. § 362, as it applies to Many Amazing Ideas, Inc., No. LA93–15924 (Bankr.C.D.Cal.) (Greenwald, J.).

## III. CONCLUSION

The Lees and the other Mantae defendants defaulted on the attachment provisions of the Court's First Supplemental Writ of April 7, 1993. Said default was contumacious and dilatory, and thus merits the harsh sanction of judgment. Joy Lee, however, had no authority to act on MCL's behalf. As such, MCL was never served or represented in

this action. Default judgment against MCL, therefore, would be inappropriate.

**IT IS THEREFORE ORDERED** that Paliafito's motion for default judgment in the amount of $8 million be **GRANTED** as to the Lees and the other Mantae defendants and **DENIED** as to MCL.

**SO ORDERED.**